Opinion issued February 12, 2004.

















In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00144-CR




CHARLES RAY MITCHELL, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 913551



 
MEMORANDUM OPINION
           Appellant, Charles Ray Mitchell, was found guilty by a jury of murder following his
plea of not guilty. The jury assessed punishment of 99 years in confinement. Appellant
asserts that the evidence is legally and factually insufficient to support his conviction for
murder, that he received ineffective assistance of counsel at the guilt/innocence phase of trial,
and that the prosecutor committed fundamental error by commenting on appellant’s failure
to testify. We affirm.
BACKGROUND
           On May 2, 2002, appellant was at “Jake’s” house, speaking to Patrick Trigg about
Keith Williams, the complainant. Appellant told Trigg that he wanted to rob Williams and
that Williams was an easy target. Appellant had previously had verbal altercations with
Williams, according to Williams’s girlfriend Tiffany McKenzie, but these altercations had
not been physical. Walter Tyler, who was also present at the house, testified that appellant
said that “he was going to get him [Williams]” and that he repeated this statement more than
once. Tyler also testified that he saw a small handgun lying on the console of the vehicle
appellant was driving earlier in the week. Appellant remained at Jake’s house until the early
morning of May 3, 2002.
           Williams was a drug dealer who sold drugs in front of his house. He also had a job
painting and hydro-blasting because his girlfriend, McKenzie, did not want him selling drugs. 
Williams picked McKenzie up from work at midnight on May 3. He was driving her car.
Except for McKenzie, only Williams drove this car. After Williams picked McKenzie up
from work, they visited a friend of Williams and then proceeded to Williams’s house. 
McKenzie went to bed after they arrived while Williams played a video game downstairs. 
McKenzie testified that her car was parked outside when she went to bed.
           That night, Patrick Sue Scott was sitting on the stairs outside her apartment. Scott
heard a car going around and heard Williams tell the occupants of the car to “Get the fuck
on.” She did not see anyone else outside with Williams. Sometime between 3:00 and 4:00
a.m., she heard a gunshot coming from near Williams’s house. After the gunshot, Scott
heard two different sounds, one that sounded like a trunk closing and another that sounded
like a door slamming shut. After she heard these sounds, Scott looked toward Williams’s
house and saw McKenzie’s car drive off. Scott noted that the car had a white styrofoam cup
on its roof and that Patrick Trigg was chasing it on a bicycle, trying to stop the driver.
           Milton Herbert, another of Williams’s neighbors, also heard the gunshot. He testified
that he had seen Williams standing with someone outside of Williams’s house. Herbert
testified that, before the gunshot, he believed that it had been about 20 minutes since he had
last seen Williams. He believed that the gunshot came between 2:30 and 3:00 a.m. and
thought that it sounded like the shot was fired from a small caliber handgun. Milton waited
for around 10 to 15 minutes before going outside after the gunshot. When he went outside,
Milton saw McKenzie’s car speeding away in a manner that indicated to Milton that
Williams was not driving. Milton was familiar with Williams’s driving and knew that
Williams always drove the car “slow and easy.” He also noted that the driver of the car was
wearing a white shirt, which was different than the red shirt Williams was wearing when
Milton saw him earlier.
           Trigg, who was visiting a friend after leaving Jake’s house, also heard the gunshot. 
He also believed that it came from a small caliber gun. Trigg made his way to Williams’s
house on a bicycle. When he neared Williams’s residence, he saw McKenzie’s car coming
out of the driveway with a cup on the roof of the car. Trigg testified that he chased the car
to tell the driver that the cup was on top of the vehicle. When the car stopped, appellant
stepped out of the car and disposed of the cup. He told Trigg that he had the car so he could
make a drug deal for Williams. Trigg testified that he was surprised to see appellant driving
the car since he knew that Williams would not allow someone else to drive the car. Shortly
thereafter, Trigg saw appellant walking toward Jake’s house. Trigg testified that he told
appellant “I hope you ain’t did what you say you was going to do.” Appellant remained
silent. Appellant’s girlfriend, Jacquelyn McClennie, picked him up shortly after he reached
Jake’s house.
           McClennie testified that she usually picked appellant up from Jake’s house at about
midnight or 1:00 a.m. if he did not call her. When she arrived at about 12:30, he was not
there and the street was deserted. McClennie drove through the neighborhood, looking for
appellant. She returned to Jake’s house and found appellant standing outside. When
McClennie asked appellant where he had been, he did not offer an explanation and just
mumbled. Appellant told McClennie to drive him to a nearby motel. She did so, and
appellant took keys out of his pocket and got into McKenzie’s car. When asked about the
car, appellant stated that some guy owed him 20 dollars and that he was upset about the debt,
so he was going to burn the car. Appellant then followed McClennie to a gas station and
filled a bucket with gasoline.
           McClennie testified that appellant instructed her to lead him to an abandoned house
that they both knew. While driving to this house, McClennie noted that appellant was no
longer following her. As she backtracked, searching for appellant, she saw Williams’s car
on fire. Appellant came running from a nearby wooded area and got into McClennie’s car. 
According to McClennie, appellant smelled like smoke and fire.
           Sometime before 7:00 a.m. on May 3, 2002, the Houston Fire Department informed
the Houston Police Department of a possible homicide. The fire department had put out the
fire on McKenzie’s car and had found a charred body in the trunk. They were able to get the
registration of the car and determine that McKenzie was the owner. The medical examiner’s
office determined that Williams died from a gunshot wound to the head from a small caliber
weapon. Officer Gugnall, who conducted a crime scene investigation around Williams’s
house, found what appeared to be blood on the side of the house and a small pool of blood
on the ground. 
           Alton Diggles testified that the day after the Williams’s death, appellant was near the
crime scene. He further testified that appellant told him that appellant had dropped
something and then appellant picked something up off of the grass, closed his hand, and left. 
           On May 6, 2002, appellant was interviewed by Detective Lance Cook and gave both
an oral and a written statement. He denied involvement with Williams’s death, stating that
he never drove Williams’s car, and that someone from Baytown might have been involved
in Williams’s death. In his statement, he mentioned that at about 8:00 p.m. on May 3, people
had told him that they saw in the news that Keith had been “burnt up in his car.” Dr.
Veronique Delattre, the chief forensic dental consultant for the Harris County medical
examiner’s office, testified that Williams was not identified via his dental records until May
6. Cook testified that he was not aware of any news coverage of the case on May 3. 
Appellant also mentioned that there was blood on the side of Williams’s house, in his
statement.
DISCUSSION
Legal and Factual Sufficiency
           Appellant, in his first point of error, asserts that the evidence is legally insufficient to
support his conviction for murder. Specifically, appellant argues that the State failed to
prove that he had the requisite intent to kill or cause serious bodily injury to the complainant
by shooting him with a firearm, but only proved that appellant had the intent to burn the car
of the complainant. Appellant, in his second point of error, asserts that the evidence was
factually insufficient to support a finding that he intentionally and knowingly committing
murder.
Standard of Review
           In reviewing the evidence on legal sufficiency grounds, we view the evidence in the
light most favorable to the prosecution to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In reviewing the evidence on factual
sufficiency grounds, all of the evidence as a whole must be reviewed neutrally, not in the
light most favorable to the prosecution. Clewis v.State, 922 S.W.2d 126, 129 (Tex. Crim.
App. 1996). After reviewing the evidence, the evidence will not be deemed factually
insufficient unless (1) it is so weak as to be clearly wrong and manifestly unjust or (2) the
adverse finding is against the great weight and preponderance of the available evidence. 
Johnson v. State, 23 S.W. 3d 1, 11 (Tex. Crim. App. 2000). However, in a factual
sufficiency review, the appellate court should not substitute its own judgment for that of the
fact finder. Jones v. State, 944 S.W.2d 642, 648 (Tex.Crim. App. 1996). Under both legal
and factual sufficiency, the jury is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given to the witnesses’ testimony. Penegraph v. State, 623
S.W.2d 341, 343 (Tex Crim. App. 1981). Intent may be inferred from the acts and conduct
of the defendant. McGee v. State, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989).
           Appellant did tell Cook that he did not drive McKenzie’s car and that he did not shoot
Williams. However, appellant made several comments to witnesses showing hostility toward
Williams and had possession of a small caliber firearm. He was seen leaving Williams’s
residence in McKenzie’s car after a shot was fired and two slamming sounds were heard. 
Appellant set the car on fire. Williams’s body was found in the trunk. Appellant told two
different stories to witnesses concerning his possession of McKenzie’s vehicle that night. 
Appellant returned to the area where the crime was committed and picked something off the
ground. Also, appellant had knowledge that would only be available to a person who knew
what had occurred. 
           A rational trier of fact could find that this evidence supports a finding beyond a
reasonable doubt that appellant had the requisite intent to kill Williams by shooting him with
a firearm as stated in the indictment. Further, given all the evidence as a whole, we do not
find that this evidence is so weak as to be clearly wrong or manifestly unjust, nor do we find
that the jury’s finding is against the great weight and preponderance of the evidence. We
overrule appellant’s first and second points of error.
Improper Jury Argument
           Appellant, in his fourth point of error, asserts that the prosecutor committed
fundamental error by commenting on appellant’s failure to testify at trial. 
           The prosecutor, in his closing, stated:
“Abraham Lincoln once said that it’s better to remain silent and be thought a
fool than to open your mouth and remove all doubt. Because if there’s any
types of gaps you might have, look at his statement. He knows about the blood
ahead of time. He knows the identity of the body in the trunk ahead of time. 
Either he’s the killer or he’s a psychic and the La Porte Police Department
needs to hire him to help them solve all these–.” 
 
The defense then objected to the sidebar remark, which was sustained as to the remarks of
appellant being a psychic. No objection was made based on any reference to appellant’s
failure to testify.


 We overrule appellant’s fourth point of error.Ineffective Assistance of Counsel
           Appellant, in his third point of error, asserts that his counsel was ineffective at the
guilt/innocence stage for failing to object to the prosecutor’s reference to his failure to testify
as indicated supra.
           The standard of review for evaluating claims of ineffective assistance of counsel is
set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). See
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Hernandez v. State, 726
S.W.2d 53, 55 (Tex. Crim. App. 1986); Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.—Houston [1st Dist.] 1996, no pet.). Appellant must show that (1) counsel’s
performance was so deficient that he was not functioning as acceptable counsel under the
Sixth Amendment and (2) but for the counsel’s error, the result of the proceedings would
have been different. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064; Thompson, 9 S.W.3d
at 812; Gamble, 916 S.W.2d at 93. 
           It is the defendant’s burden to prove ineffective assistance of counsel. Strickland, 466
U.S. at 687, 104 S. Ct. at 2064; Gamble, 916 S.W.2d at 93. A defendant must overcome the
presumption that, under the circumstances, the challenged action might be considered sound
trial strategy. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Thompson, 9 S.W.3d at 813;
Gamble, 916 S.W.2d at 93. 
           The record is silent as to why appellant’s trial counsel did not object to the
prosecutor’s remarks in his closing. To find that trial counsel was ineffective based on the
asserted grounds would call for speculation, which we will not do.


 See Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994). We overrule appellant’s third point of error.CONCLUSION
           We affirm the judgment of the trial court. 
 
 
                                                                  Sam Nuchia
                                                                  Justice
 
Panel consists of Justices Nuchia, Alcala, and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).